Hope Nancy Kirsch, 018822
Lori Kirsch-Goodwin, 016233
**KIRSCH-GOODWIN & KIRSCH, PLLC**
8900 East Pinnacle Peak Rd., Suite 250
(480) 585-0600
hope@kgklaw.com
lkg@kgklaw.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J.Z., a Student, by and through Parents, J.Z. and E.J., <br><br> Plaintiffs, <br><br> vs. <br><br> Catalina Foothills School District, <br><br> Defendant. | No. <br><br> **COMPLAINT** <br><br> **Appeal from Case No. 20C-DP-044-ADE** |

J.Z., a Student, by and through Parents, J.Z. and E.J., allege as follows:

**JURISDICTION, PARTIES AND VENUE**

1. Plaintiff, pursuant to 20 U.S.C. § 1415(i)(2), brings this civil action for judicial review of a final administrative decision of the Arizona Office of Administrative Hearings ("OAH") under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").

2. This Court has jurisdiction under 20 U.S.C. § 1415(i)(3)(A) and 28 U.S.C. § 1331.

3. Venue is proper in the Tucson Division of the District of Arizona under 28 U.S.C. § 1391(b) because it is the judicial district in which Defendant, Catalina Foothills School District, a political subdivision of the State of Arizona, maintains its primary place of business and all events giving rise to this action occurred in Pima County, Arizona.

4. Plaintiff J.Z. ("Student") is a minor child with a disability who resides with his parents, J.Z. and E.J. ("Parents"), within the boundaries of the Catalina Foothills School District.[1]

5. Defendant, Catalina Foothills School District (the "District"), is a public school district organized under the laws of the State of Arizona.

6. Student is a child with a disability who qualifies for special education and related services under the IDEA. Catalina Foothills School District ("District") is therefore the local educational agency ("LEA") responsible under the IDEA for the provision of a free and appropriate public education ("FAPE") to Student.

## FACTUAL BACKGROUND

7. J.Z. ("Student") is a sixteen year old boy (DOB 8/12/2004) currently in 11th grade.

8. He attended Catalina Foothills High School in the District for 7th, 8th and 9th grades.

9. He was never evaluated for special education but was covered by an accommodation plan under Section 504 of the Rehabilitation Act of 1973 ("504 Plan") since Spring 2017 that provided for extra time to complete tasks, clarifying understanding of expectations, and preferential seating to eliminate distractions.

10. After the 2018-2019 school year ended, Student threatened suicide May 31, 2019, and both suicide and homicide July 1, 2019.

11. Student was admitted to a psychiatric hospital in May 2019 following the suicide attempt, and shortly thereafter diagnosed with bipolar disorder.

12. Following the suicide and homicide threat, Student was admitted to a short-term residential treatment center ("RTC").

13. In anticipation of his return home, Parents contacted the District early August 2019 requesting an IEP, explaining what had occurred over the summer, and provided the District with a neuropsychological assessment that was conducted July 2019

---

[1] Student is temporarily in a residential treatment center out-of-state, but his permanent residence is with his parents.

2

diagnosing Attention-Deficit/Hyperactivity Disorder predominantly inattentive presentation ("ADHD"), Oppositional Defiant Disorder ("ODD"), and Unspecified Depressive Disorder.

14. Parents sent several emails to various District personnel as they were told time and again that someone else is responsible.

15. They were also told, among other things, that they had to either homeschool Student or enroll him in an online school in order to be considered for an IEP.

16. Student was facing discharge from the short-term RTC. Frustrated with no substantive responses from the District and its lack of a commitment to evaluate Student, Parents moved Student to a longer-term RTC, Change Lake of the Ozarks ("CALO").

17. After moving Student to CALO, received a Prior Written Notice ("PWN") denying their request for an evaluation for special education, asserting that the Student Study Team ("SST") met (without Parents) and concluded that there were no <u>academic</u> concerns to warrant an evaluation.

18. Parents continued to follow-up with the District pleading for an evaluation, expressing their desire to have Student back home and to know what services and supports the District could offer. The District consistently maintained its position that the 504 Plan was sufficient.

19. Parents then requested an Independent Educational Evaluation (IEE") as the District failed to assess in all (actually, in any) areas of disability. The District refused, but failed to issue a PWN explaining its reason for the denial.

20. Without an evaluation from the District, and no response to their request for an IEE, Parents arranged for, and paid for, an evaluation.

**PROCEDURAL HISTORY**

19. On January 14, 2020, Student's Parents filed a due process complaint on Student's behalf with the Arizona Department of Education ("ADE") containing eight allegations.

20. This appeal is limited to the following issues:

- <u>Issue denominated number 2</u>.   Failure to evaluate:  Whether the District wrongfully refused Parents' request for an evaluation for special education and related services?
- <u>Issue denominated number 3</u>.   Failure to evaluate:  Whether the District's refusal of Parents' request for an evaluation deprived Parents of their right to meaningfully participate in the decision-making process regarding the provision of a FAPE to Student?
- <u>Issue denominated number 4</u>.   Whether the District violated the IDEA by failing to timely respond to Parents' request for an IEE?
- <u>Issue denominated number 5</u>.   Whether Parents are entitled to reimbursement for the evaluation they obtained at their own expense after the District failed and refused to respond to their request for an IEE?

21. By way of relief, Parents requested an Order for reimbursement for expenses incurred for their unilateral placement of Student at CALO, continued placement at CALO, and reimbursement for the evaluation they obtained.

22. In this appeal, Parents seek reimbursement for the evaluation they obtained when the District refused to evaluate and failed to respond to their request for an IEE.

23. The ADE referred the complaint to the Office of Administrative Hearings ("OAH") for a hearing before an assigned administrative judge ("ALJ"), Jenna Clark, in case number 16C-DP-044-ADE. The ALJ held a hearing on May 18, 19, 20 and 21, 2020, to receive evidence and concerning the claims raised in the complaint.

24. The ALJ issued her decision on October 2, 2020, and it was sent and received via email on October 5, 2020.  This appeal is timely as it is filed within thirty-five (35) days of receipt of the ALJ decision.  A copy of the final ALJ decision is attached hereto as **Exh. A**.  In her decision, the ALJ concluded that

Student was not eligible for special education and related services because his disability did not adversely affect his academic performance or ability to access the general education curriculum and that there was no proof of an y violation of the IDEA.

25. With respect to the issue denominated 3 ("Whether the District's refusal of Parents' request for an evaluation deprived Parents of their right to meaningfully participate in the decision-making process regarding the provision of a FAPE to Student"), the ALJ stated that the issue was withdrawn by stipulation of the parties on May 6, 2020.  The ALJ was incorrect because the stipulation was amended and filed May 7, 2020, and that issue was no longer withdrawn.  Plaintiff (Petitioners in the Due Process Complaint) filed a Motion for Reconsideration on October 5, 2020, informing the ALJ of her error, pointing out that both parties argued the issue in their respective closing briefs, and requesting (re)consideration of the issue.  There was no Order forthcoming in response one way or the other.

26. With respect to the other issues of failure to evaluate, failure to respond to the IEE request, and right to reimbursement for the evaluation, the ALJ decision ignored key evidence, was inherently inconsistent, failed to note relevant authority, and was thus fatally flawed.

27. Student is aggrieved by the findings and decision of the ALJ insofar as they are erroneous and improperly deny relief to Student.  Among other things, and not by way of limitation:

(i) The ALJ decision was mistakenly singularly focused on Student's academics, especially the progress that preceded the behavioral health crises that occurred during the summer of 2019.  The ALJ ignored the social-emotional implications of the behavioral health crises, and also how the Student's mental health might affect his ability to access the curriculum and his academic progress.

(ii) The ALJ decision ignored the current snapshot of Student, focusing instead only on the past. Noting that the behavioral health crises were new, the ALJ ignored their implications, such as how they would impact Student upon returning to school.

(iii) The ALJ decision ignored the significance of the IDEA as being much more than just academics. Most notably, the ALJ cited only 34 C.F.R. § 300.304(c)(4) for concluding that the District was correct to not suspect Student was a child with a disability because Student had made academic progress prior to the behavioral health crises. But that regulation betrays the ALJ's conclusion as it requires that a school evaluate in all areas of suspected disability, not only academics.

(iv) The ALJ decision ignored the information that would have been available if the District met with the Parents and if the District evaluated the Student. Thus, the ALJ allowed the District to ignore the pivotal role of Parents, thereby violating the IDEA.

(v) The ALJ decision allowed the District to predetermine non-eligibility without even convening a review of existing data meeting, 34 C.F.R. § 300.305, in violation of the IDEA.

(vi) The ALJ decision allowed the District to reach an eligibility decision without evaluating Student, in violation of the IDEA.

(vii) The ALJ decision allowed the District to deny an IEE request by simply refusing an evaluation outright;

(viii) The ALJ decision has wide ranging implications that would allow local educational agencies ("LEAs") - school districts and charter schools - to outright deny parent requests for evaluation by simply meeting without parents, looking a very narrow scope of the child, and ignoring any change in needs of a student. The ALJ decision

6

will allow LEAs to block access to the IDEA.

(ix) The ALJ decision cited only 34 C.F.R. § 300.503(b)(1) for concluding that parents are not entitled to an IEE, but the ALJ decision ignored the lack of recourse when an LEA refuses to evaluate, and the refusal is without any parent input, in violation of the IDEA.

(x) The ALJ decision is woefully short of legal support.

**WHEREFORE**, Plaintiff requests that this Court receive and review the records of the administrative proceedings and, after considering the evidence and the arguments of counsel:

1. Either find that the District's refusal of Parents' request for an evaluation deprived Parents of their right to meaningfully participate in the decision-making process regarding the provision of a FAPE to Student, or remand the issue back to the ALJ for consideration;
2. Reverse and vacate the part of the decision of the ALJ that Respondent did not wrongly refuse Parents' request for an evaluation for special education and related services;
3. Reverse and vacate the part of the decision that denied Respondent reimbursement for the evaluation Parents obtained;
4. Enter judgment in favor of Plaintiff and as the prevailing party on the foregoing issues as the actions of Respondent were neither procedurally nor substantively sound;
5. Enter judgment for Plaintiff for reasonable attorneys' fees and costs incurred in the administrative proceedings for the foregoing issues and for pursuing this appeal; and
6. Grant such other and further relief as it deems just and proper.

RESPECTFULLY SUMBITTED November 6, 2020.

KIRSCH-GOODWIN & KIRSCH, PLLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: /s/ *Hope Nancy Kirsch*
Hope Nancy Kirsch
*Attorneys for Plaintiff*